[No. 21135. Department Two. August 30, 1928.]

GUDRUN MILLER, *Appellant,* v. NATIONAL FURNITURE
COMPANY *et al., Respondents.*[1]

[1] MASTER AND SERVANT (114, 151)—INJURIES TO SERVANT—CON-
TRIBUTORY NEGLIGENCE — USE OF APPLIANCES — ELEVATORS — EVI-
DENCE—SUFFICIENCY. The janitor of a building, killed when
struck by a descending counter-weight while cleaning out the
pit of an elevator shaft, is guilty of contributory negligence, as
a matter of law, precluding any recovery for his death, where
he had worked in the same capacity for many years, cleaning
out the pit every few weeks, and was familiar with the opera-
tion of the elevator, and must have either started the elevator
by pulling a rope which caused the counter-weight to descend
upon him, or had warning, by the hum of the motor, that some
one else had started it, and failed to stop it by a pull on the
rope.

Appeal from a judgment of the superior court for
King county, Findley, J., entered November 14, 1927,
in favor of the defendant, upon granting a nonsuit, in
an action for the wrongful death of a servant, tried to
a jury. Affirmed.

*Murphy & Kumm* and *Orville C. Hatch, Jr.,* for ap-
pellant.

*J. C. Allen (John F. Walthew,* of counsel), for
respondents.

MAIN, J.—The plaintiff, as administratrix of the
estate of Kristian Miller, deceased, brought this action
to recover damages for his death. The cause came on
for trial before the court and a jury. At the con-
clusion of the plaintiff's évidence, the defendants
moved for a nonsuit which was sustained. Judgment
was entered dismissing the action, from which the
plaintiff appeals.

[1]Reported in 269 Pac. 1038.

The facts are these: The respondents, Samuel, Abraham and Nathan Levitt and Jennie Prottas, operated a retail furniture store, in the city of Seattle, under the name of the National Furniture Company. William Mittelberger was the manager. The building occupied by the company was three stories and a basement. The entire building, with the exception of a portion of the first floor, was used by the company.

In connection with the building there was an elevator, the shaft of which extended from the top of the building to the basement floor. There was a pit at the base of the elevator shaft which extended three or four feet below the basement floor of the building, and this was narrower than the rest of the shaft. On two sides of the pit there was a shelf or recess.

In connection with the elevator, there was a counterweight which ran in guides fastened against one wall of the shaft. The counterweight moved up and down the shaft in the opposite direction to the movement of the elevator. When the elevator was going up, it would come down. When the elevator was at the top floor, the counterweight would be at the basement floor. This counterweight weighed approximately three hundred and fifty pounds. On the shelf above referred to, on the side the counterweight operated, was an old cable, approximately seventy-five feet in length and which would weigh three or four hundred pounds. On the opposite side, on the other shelf or recess, was the motor which operated the elevator. The starting machinery of the motor was controlled by means of an endless cable which operated on two wheels, one at the bottom of the shaft and the other at the top, which cable ran through the elevator. To start or stop the elevator, this rope was pulled.

Kristian Miller was employed by the National Furniture Company as a janitor, which position he had held

for many years. He was relief man for the elevator and was familiar with its condition and operation. On May 14, 1925, the regular elevator operator was ill, and Miller operated the elevator for about a week prior to that time. Miller was the only one authorized to use the elevator at this time.

A day or two previous to May 14, two fire inspectors from the fire marshal's office of the city of Seattle visited the building and made a routine inspection. When they started the inspection, Mittelberger, the manager, directed that Miller, the janitor, accompany him as it would be necessary for him to make such adjustments or changes as they should recommend. In the course of this inspection, papers and debris were found in the elevator pit which were directed to be removed. The inspectors did not direct the removal of the cable. Mittelberger, without specifying any particular time, directed Miller to remove the cable, sell it for junk and keep the proceeds. During the forenoon of May 14, 1925, Miller was severely injured in the pit of the elevator shaft, from which injuries he died soon after. The present action was begun, as above stated, to recover for his death.

Without so deciding, it will be assumed that there was sufficient evidence to take the case to the jury on the question of the negligence of the respondents. If there was such negligence, it was by reason of the fact that no one was put in charge of the elevator while the deceased was in the pit, or because the doors were not so locked that no one could enter and operate the elevator. The facts upon this question will not be detailed, as the judgment must be affirmed on the ground of contributory negligence on the part of the deceased, as a matter of law. As bearing upon this question, further facts will be stated.

[1] The deceased had been working in the same capacity as janitor and relief elevator man for many years, and was familiar with the elevator and its operation. Every six or eight weeks, he had gone into the elevator pit for the purpose of cleaning out the paper and debris. The elevator was slow moving. When the rope was pulled and it started, there was a click in the machinery which could be heard generally throughout the building. The motor, when in operation, made a humming noise which could be distinctly heard in the pit. Whether, when the deceased entered the elevator pit on the day of his injury, by pulling the rope himself and causing the elevator to rise and failing to pull the rope to stop it, or whether the elevator was started by some other person using it during the time he was in the pit, does not appear. It is a reasonable inference from the evidence that, at the time of his injury, the deceased had entered the pit with a broom and dust pan, was in the act of examining the cable which he was going to remove and was directly under the counterweight which came down striking him on the back and causing the injuries which resulted in his death.

If, upon entering the pit, he pulled the rope and started the elevator and thereafter neglected to again pull the rope to stop it after he had entered the pit, it is plain that he would be guilty of contributory negligence, as a matter of law. On the other hand, if the elevator was at rest when he entered the pit and it was started by some other person, the hum of the motor only a few feet from him, if he did not hear the click of the starting, would be a notification to him that the elevator was in motion. Knowing that, as the elevator went up, the counterweight came down, the deceased, by placing himself directly under the counterweight while the elevator was in motion and remaining there until he was injured by the counter-

weight, was plainly an act of contributory negligence and the court correctly withdrew the case from the jury.

There is, of course, a presumption that the deceased was in the exercise of ordinary care, and the mere fact of injury does not overthrow this presumption. The presumption, however, cannot prevail as against unmistakable evidence from which the inference must be drawn that the accident was due to contributory negligence. As above indicated, there is such evidence in this case.

A discussion of the cases would be unprofitable, for every case presents a little different state of facts. No case has been cited by either party which can be said to be closely analogous in its facts to the one now before us. The case of *Dossett v. St. Paul & Tacoma Lum. Co.*, 40 Wash. 276, 82 Pac. 273, is materially different. There the injured person was in a place of safety, and while in this place, a vice principal of the defendant started the machinery which made the place immediately dangerous and resulted in the plaintiff's injury. There are no similar facts in the present case.

The judgment will be affirmed.

FULLERTON, C. J., ASKREN, BEALS, and HOLCOMB, JJ., concur.